**GOLDFARB, Appellant and Cross–Appellee,**

**v.**

**THE ROBB REPORT, INC., Appellee and Cross–Appellant.**

[Cite as *Goldfarb v. The Robb Report, Inc.* (1991), 77 Ohio App.3d 362.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–442.

Decided Sept. 26, 1991.

*Lindhorst & Dreidame* and *James M. Moore*, for appellant and cross-appellee.

*Schrim & Greenwald* and *John E. Haller*, for appellee and cross-appellant.

---

PEGGY BRYANT, Judge.

Plaintiff-appellant, Lawrence S. Goldfarb, appeals from a judgment of the Franklin County Court of Common Pleas, finding for defendant-appellee, The Robb Report, Inc., on plaintiff's complaint and ordering plaintiff to pay damages to defendant.

In 1982, plaintiff became a franchisee of defendant, which entitled plaintiff to sell advertising space in defendant's magazine within a specified geographic area and to earn commissions on such sales. In 1984, when the time for renewing plaintiff's franchise approached, defendant executed a standard franchise agreement and sent it to plaintiff for his execution. Plaintiff telephoned defendant, seeking concessions from defendant before signing the standard contract, because plaintiff felt that the standard agreement contained terms less favorable to plaintiff than past agreements, particularly regarding commission rates, franchise renewal fees, and the extent of plaintiff's sales territory.

Following his telephone conversation with plaintiff, defendant's vice-president, Rick Kaiser, responded on February 22, 1984 by sending a letter to plaintiff confirming modifications to the standard agreement which he and plaintiff had discussed, and instructing plaintiff to sign the letter and return it to defendant if plaintiff accepted the terms therein. Instead of signing the letter, plaintiff had his attorney prepare an addendum to the standard franchise agreement which contained the terms in the letter. Plaintiff then executed both the standard agreement and the addendum in early March 1984, and sent them to defendant. No one executed the addendum on behalf of defendant.

Plaintiff brought suit against defendant for a declaratory judgment, permanent injunctive relief, and compensatory and punitive damages, alleging that defendant breached the franchise agreement, diminished the value of plaintiff's franchise, and tortiously interfered with plaintiff's business relationships. The trial court granted plaintiff's motions for a preliminary injunction and for a default judgment against defendant. Subsequently, the trial court granted defendant's motions to vacate the default judgment for lack of written notice pursuant to Civ.R. 55(A), and to file a late answer instanter.

Defendant's answer, filed promptly after leave of court but only two weeks before the scheduled trial date, included a counterclaim for a declaratory judgment and damages, alleging that plaintiff breached the franchise agreement. Plaintiff moved to strike the counterclaim, or in the alternative for a continuance, on the ground that it would be prejudiced by having to prepare a defense in the short time remaining before trial. The trial court verbally granted plaintiff's motion to strike on the first day of the trial.

The case was tried to a referee in September 1986. However, apparently believing mistakenly that the case had been settled, the referee did not issue a report thereon for nearly four years. The referee found that the standard franchise agreement constituted the entire agreement of the parties; that of all plaintiff's claims, plaintiff had proved only his breach-of-contract claim; that defendant owed plaintiff $5,790.25 in unpaid commissions; that plaintiff owed defendant $21,000 in unpaid annual franchise fees; and that plaintiff was no longer a franchisee because he failed to pay the requisite annual fees.

The referee then determined that while the absence of a counterclaim precluded defendant from obtaining an affirmative recovery from plaintiff, plaintiff's implicit consent to trial of the issues raised in defendant's counterclaim entitled defendant to set off its liability to plaintiff against plaintiff's liability to defendant. On the basis of plaintiff's violation of the preliminary injunction order, the referee further found that plaintiff owed to defendant $18,685.70, notwithstanding the trial court's striking defendant's claim for affirmative relief.

The trial court overruled plaintiff's objections to the referee's report, confirmed the report in its entirety, and vacated the preliminary injunction order. Plaintiff appeals therefrom, assigning the following errors:

"1. The trial court erred to the prejudice of appellant in confirming and adopting the portion of the referee's report which found that the appellant's contract rights were limited to those set forth in the franchise agreement dated March 1984 (plaintiff's exhibit 1). Such finding and conclusion are against the manifest weight of the evidence and contrary to law.

"2. The trial court erred to the prejudice of appellant in confirming and adopting the portion of the referee's report finding that appellant failed to pay $10,500 per year in renewal fees for 1985 and 1986 and further finding that appellee established that appellant is no longer a franchisee because he failed to pay the requisite annual fee.

"3. The trial court erred to the prejudice of appellant in adopting and confirming the portion of the referee's report which determined that appellant was owed unpaid commissions totalling $5,790.25 from appellee.

"4. The trial court erred to the prejudice of appellant in confirming that portion of the referee's report which awarded appellee a monetary judgment against appellant.

"5. The trial court erred to the prejudice of appellant in concluding that appellant failed to pay funds required by the preliminary injunction order."

Defendant cross-appeals, assigning the following errors:

"A. The trial court erred in striking The Robb Report's counterclaim.

"B. The trial court erred in not awarding The Robb Report damages for annual renewal fees which the evidence established were owed by Goldfarb to The Robb Report."

At the outset, we address defendant's first cross-assignment of error, which asserts that the trial court erred in striking defendant's counterclaim for damages and declaratory relief, which was based upon plaintiff's breach of the franchise agreement.

Plaintiff contends that defendant's inclusion of a counterclaim in its answer was improper, as defendant sought and obtained leave of the court only to file a late answer. Defendant responds that its counterclaim arises out of the same transaction or occurrence as plaintiff's complaint; and that its counterclaim thus was compulsory under Civ.R. 13(A).

Civ.R. 13(A) provides that:

"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.  * * * "

Applying the foregoing parameters to the facts herein, defendant had a claim against plaintiff at the time it served its answer upon plaintiff, and that claim arose out of the same transaction or occurrence as plaintiff's claims. Consequently, Civ.R. 13(A) required defendant to include such a counterclaim in its answer. See *Geauga Truck & Implement Co. v. Juskiewicz* (1984), 9 Ohio St.3d 12, 9 OBR 61, 457 N.E.2d 827, syllabus. Given the compulsory nature of defendant's counterclaims, as well as the trial court's allowing defendant to file a responsive pleading instanter, the trial court abused its discretion in striking defendant's counterclaim in the absence of other circumstances which might justify such severe action.

We sustain defendant's first cross-assignment of error.

We next consider plaintiff's fourth assignment of error, which asserts that the trial court abused its discretion in awarding defendant a monetary

judgment against plaintiff; that defendant's counterclaim was stricken before trial; and that plaintiff did not consent to trial of the issues raised by defendant's counterclaim. Defendant responds that plaintiff consented implicitly to trial of the issues raised by defendant's counterclaim, because (1) plaintiff's claims raised the issue of the amount due under the franchise agreement, and (2) plaintiff had obtained a preliminary injunction order outlining the obligations of the parties with respect to advertising placement and payment.

Civ.R. 15(B) provides as follows:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * * If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. * * *"

In *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 5 OBR 99, 448 N.E.2d 1159, paragraph one of the syllabus, the Supreme Court set forth factors to be considered in determining whether a party implicitly consented to trial of an unpleaded issue, including:

" * * * whether * * * [the parties] recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be tried on a different theory; and, whether the witnesses were subjected to extensive cross-examination on the issue."

The Supreme Court further noted that implied amendment of the pleadings would not be permitted under Civ.R. 15(B) when a party would be substantially prejudiced thereby. *Id.*

Under the foregoing parameters, the record reveals no express consent by plaintiff to try the issues raised by defendant's counterclaim. Nor did plaintiff consent implicitly: plaintiff recognized that defendant was posing questions on cross-examination relating to defendant's counterclaim, and plaintiff objected to these questions, *Burton v. Middletown* (1982), 4 Ohio App.3d 114, 121, 4 OBR 205, 212, 446 N.E.2d 793, 801.

Moreover, plaintiff lacked a fair opportunity to address the tendered issue at trial, as plaintiff relied on the referee's rulings that evidence of plaintiff's obligations to defendant was not admissible for the purpose of a counterclaim or setoff and that evidence regarding franchise renewal fees was admissible

only for the limited purpose of determining whether payment of such fees was a condition precedent to the existence of a franchise contract. As a result, plaintiff conducted no extensive cross-examination on the issues raised in defendant's counterclaim.

In the final analysis, plaintiff relied upon the trial court's striking defendant's counterclaim before the trial, and upon the referee's rulings consistent therewith that evidence of plaintiff's obligation to defendant was not admissible for the purpose of a counterclaim or setoff. Thus the trial court's subsequent determination of the issues raised in defendant's counterclaim substantially prejudiced plaintiff. Finding that the trial court abused its discretion in determining such issues and in awarding defendant a monetary judgment against plaintiff, we sustain plaintiff's fourth assignment of error.

■ Defendant's second cross-assignment of error asserts that the trial court erred in not awarding defendant damages for annual franchise renewal fees, which the evidence showed plaintiff owed to defendant.

However, as noted above, the trial court struck defendant's counterclaim seeking monetary relief from plaintiff. Finding no explicit or implicit consent by plaintiff to trial of plaintiff's liability to defendant for annual franchise renewal fees, the trial court did not err in refusing to award defendant damages for annual franchise fees. Defendant's second cross-assignment of error is overruled.

We consider plaintiff's first three assignments of error together, because all deal with the terms of the franchise agreement between the parties.

Plaintiff's first assignment of error asserts that the trial court erred in determining that the entire agreement of the parties was the standard franchise contract. Specifically, plaintiff argues that the terms in defendant's February 22, 1984 letter, and in plaintiff's addendum to the standard agreement which incorporated the terms of the letter, were a part of the contract because they confirmed an earlier verbal agreement. Defendant counters that plaintiff received the letter prior to executing the standard agreement, and executed the standard agreement at the same time as the addendum; and that the letter and addendum thus were prior or contemporaneous agreements which could not modify the standard agreement pursuant to the integration clause contained therein.

■ Generally, all negotiations and prior conversations are merged in a final written document which embodies the agreement of the parties. *O'Neill v. German* (1951), 154 Ohio St. 565, 571, 44 O.O. 11, 14, 97 N.E.2d 8, 11. Inasmuch as defendant's letter begins with the words "[t]o finalize our franchise agreement," the standard franchise agreement does not constitute

the final written document which embodies the agreement of the parties. Rather, the standard agreement sent to plaintiff was an offer by defendant, which was modified by the parties and confirmed by defendant's letter before plaintiff accepted the agreement. See *Leaseway Distrib. Ctrs., Inc. v. Ohio Dept. of Adm. Serv.* (1988), 49 Ohio App.3d 99, 105, 550 N.E.2d 955, 961. Thus, a contract was formed which incorporates the terms of the letter if plaintiff properly accepted defendant's modified offer.

Defendant, however, also argues that the letter did not become part of the contract because plaintiff failed to sign and return the letter in accordance with the instructions therein; and that the addendum did not become part of the contract because it contained new and different terms than those contained in the letter, and therefore constituted a counteroffer rather than an acceptance of the letter's terms.

■■■ Generally, an offer and an acceptance constitute a contract if no material variance exists between them. *Karas v. Brogan* (1978), 55 Ohio St.2d 128, 129, 9 O.O.3d 107, 107, 378 N.E.2d 470, 471; cf. *Foster v. Ohio State Univ.* (1987), 41 Ohio App.3d 86, 88, 534 N.E.2d 1220, 1222. The record reveals no material variance between the terms of the letter and those of the addendum that would render the addendum a counteroffer rather than an acceptance. The record also reveals no material variance between the manner of acceptance prescribed in the letter and plaintiff's acceptance, particularly in light of the letter's assertion that "[t]his will be attached to your agreement." Therefore, the parties formed a contract containing the terms in the letter and incorporated in the addendum.

Plaintiff's third assignment of error asserts that the trial court erred in determining the amount of unpaid commissions defendant owed to plaintiff, while plaintiff's second assignment of error asserts that the trial court erred in awarding damages to defendant based on the annual franchise fees contained in the standard franchise agreement, and in finding that plaintiff is no longer a franchisee because of plaintiff's failure to pay such fees.

■■ Having determined that the letter and plaintiff's addendum modify the terms of the standard franchise agreement, we also conclude that the trial court erred in calculating the unpaid commissions owed to plaintiff based on the annual franchise fees contained in the standard franchise agreement. Similarly, the trial court erred in awarding damages to defendant based on the annual franchise fees contained in the standard franchise agreement. However, we are unable to determine whether the trial court erred in finding that plaintiff is no longer a franchisee, because the trial court applied only the terms of the standard franchise agreement in determining whether the parties complied with their obligations under that agreement.

Accordingly, we sustain plaintiff's first and third assignments of error, and plaintiff's second assignment of error as to the damages award, and remand to the trial court to determine plaintiff's status as a franchisee pursuant to the modified franchise agreement, and the amount of unpaid commissions owed to plaintiff by defendant pursuant to that modified agreement.

Plaintiff's fifth assignment of error asserts that the trial court erred in concluding that plaintiff failed to pay funds required by the preliminary injunction order, as the issue of plaintiff's compliance with said order was not before the trial court. Defendant responds that plaintiff's claims raised the issue of compliance with the preliminary injunction order; thus the trial court properly determined that plaintiff failed to comply with the terms of that order.

While the basis of plaintiff's contentions is not entirely clear, to the extent that plaintiff argues that the trial court erred in enforcing plaintiff's compliance with the preliminary injunction order in the instant action, enforcement of a court order generally is properly coerced in a claim for civil contempt, which defendant did not assert herein. See *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 58, 56 O.O.2d 31, 32, 271 N.E.2d 815, 817. To the extent that plaintiff argues that the trial court erred in granting affirmative relief to defendant after the trial court struck defendant's counterclaim, we have already determined that plaintiff neither explicitly nor implicitly consented to trial of the issues raised by that counterclaim. To the extent that plaintiff argues that the trial court erred in calculating plaintiff's obligation to defendant based on the terms of the standard franchise agreement, we have already determined that the letter and addendum modify the standard franchise agreement, and that the modified franchise agreement defines the obligations of the parties.

Accordingly, we sustain plaintiff's fifth assignment of error, and remand the cause to the trial court to determine whether plaintiff is liable to defendant on defendant's counterclaim for unpaid commissions, and to determine the amount of any such liability in accordance with the terms of the modified franchise agreement.

Having sustained plaintiff's first, third, fourth, and fifth assignments of error, and plaintiff's second assignment of error as to the trial court's award of affirmative monetary relief to defendant, and having sustained defendant's first cross-assignment of error and overruled defendant's second cross-assignment of error, we reverse the judgment of the trial court and remand the cause to determine plaintiff's status as a franchisee pursuant to the modified franchise agreement, plaintiff's liability to defendant on defendant's counterclaim, and the amount of damages, if any, to which each party is entitled in

accordance with the modified franchise agreement. Furthermore, we recommend that this case be consolidated with the case involving the same parties which presently is pending in the Franklin County Court of Common Pleas.

*Judgment reversed*
*and cause remanded.*

McCormac and Petree, JJ., concur.